**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| **STIMWAVE TECHNOLOGIES INCORPORATED**, *et al.*,[1] | Case No. 22-10541 (TMH) (Jointly Administered) |
| Debtors. | **Hearing Date:** January 29, 2024, at 11:00 a.m. EST |
| | **Objection Deadline:** January 22, 2024, at 4:00 p.m. EST |

**LIQUIDATING TRUSTEE'S MOTION FOR AN ORDER IMPOSING NON-MONETARY SANCTIONS AGAINST LAURA PERRYMAN, GARY PERRYMAN, BRANDYN PERRYMAN, AND RELATED OR AFFILIATED ENTITIES; AND (II) GRANTING RELATED RELIEF**

Province, LLC, as Liquidating Trustee for the SWTI Liquidating Trust (the "Liquidating Trust") hereby files its *Liquidating Trustee's Motion for an Order Imposing Non-Monetary Sanctions Against Laura Perryman, Gary Perryman, Brandyn Perryman, and Related or Affiliated Entities; and (II) Granting Related Relief* (the "Motion").

**RELIEF REQUESTED**

1.      The Liquidating Trustee seeks non-monetary sanctions against Laura Perryman, Gary Perryman, Brandyn Perryman, and all related or affiliated entities controlled by them, including without limitation the Perryman Family Trust, StimGuard, LLC, and LTP Limited, LLC (either individually or collectively, the "Perrymans") on account of their numerous, frivolous filings in the main bankruptcy cases, various adversary proceedings, and the district court all of

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include Stimwave Technologies Incorporated (7426) and Stimwave LLC (5018). The Debtors' mailing address is Stimwave Technologies Incorporated, *et al.*, c/o Province, LLC, Attn: Amanda Demby, 2360 Corporate Circle, Suite 340, Henderson, NV 89074.

which have unnecessarily caused these estates to incur substantial administrative professional fees and are delaying and obstructing the administration of these cases. Specifically, the Liquidating Trustee seeks an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"):

(a) granting non-monetary sanctions in the form of a pre-screening injunction prohibiting the Perrymans from future *pro se* filings without first obtaining leave of this court, as follows (the "Filing Protocols"):

(i) to obtain leave to make a filing, the Perrymans must submit to the Court a motion, which will be a short summary of the proposed filing without exhibits, that:

(1) shall be double-spaced and printed in 12-point or larger type in an easily readable font;

(2) shall not exceed two pages in length;

(3) shall be styled as a "Motion for Leave to File;"

(4) shall briefly (a) state that the Perrymans seek the Court's approval to make a particular filing, (b) explain the legal purpose or basis of the pleading, (c) describe the nature of the pleading with specificity, (d) indicate whether the relief has been previously sought in this or another court, and if so, when and where and whether there has been a ruling; (e) to the extent that the filing seeks to assert a claim against the Debtors, their estates, the Liquidating Trust, or the Liquidating Trust Assets, set forth the basis on which the Perrymans assert that a late-filing should be permitted; and (f) shall be delivered by email to the Court and shall not be filed on the Court's docket;

(ii)    the Court will review such submissions in chambers and, if appropriate, enter an order denying the request, granting it, or scheduling the matter for hearing, depending on the circumstances and the Court's conclusions;

(iii)    Grounds for denying the Perrymans leave to make a proposed filing include, but are not limited to, filings that are deemed to be repetitive, duplicative, vexatious, incoherent, and/or pertain to issues already decided by the Court;

(iv)    In its discretion, the Court may:

(1) Order the Perrymans to mail a copy of the proposed filing to his chambers for further review,

(2) Order any interested party to show cause as to why the Perrymans should not be permitted to make a proposed filing; or

2

(3) Grant in part and deny in part leave to make a proposed filing;

(v)    Any violations of the Order may result in further sanctions, including monetary as well as non-monetary sanctions; and

(b)    Granting any other relief that the Court deems to be necessary or appropriate.

2.    Notably, the Perrymans are well aware of the consequences of repeatedly pursuing frivolous, vexatious, and baseless litigation as Ms. Perryman has engaged in this pattern of conduct in other cases, including a prior bankruptcy case in which, after repeated warnings, she was subjected to both monetary and non-monetary sanctions in the form of a pre-screening injunction substantially identical to the injunction and Filing Protocols requested in this Motion. The facts of that case, and the legal basis for the Order, are set forth in a published opinion. *See In re: Micron Devices*, 638 B.R. 649 (Bankr. S.D. Fl. 2021). While the Liquidating Trustee is not seeking monetary sanctions pursuant to 28 U.S.C. § 1927 at this time, it reserves the right to do so.

## <u>JURISDICTION AND VENUE</u>

3.    The United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012 (Sleet, C.J.).

4.    This is a core proceeding pursuant to 28 U.S.C. § 157(b). Pursuant to Local Rule 9013-1(f), the Liquidating Trustee confirms its consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot

enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**BASIS FOR RELIEF**

6.    The bases for the relief requested in this Motion are 28 U.S.C. § 1651(a) (the "All Writs Act"), Section 105(a) of 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), Rule 11 of the Federal Rules of Civil Procedure, Bankruptcy Rule 9011, and this Court's inherent authority.

**RELEVANT PROCEDURAL BACKGROUND**

7.    As set forth in detail in the Debtors' disclosure statement, the overhang of a civil investigative demand from the Department of Justice (the "DOJ") pursuant to the False Claims Act, which precipitated the resignation of the Debtors' Chief Executive Officer, Laura Perryman, the aftermath of former management's actions, substantial litigation expenses, and the COVID-19 pandemic all resulted in a liquidity crisis for the Debtors, prompting them to commence these Chapter 11 cases on June 16, 2022. [D.I. 702, Section II.H].

**A.  Confirmation of the Debtors' Plan and Creation of the Liquidating Trust**

8.    Following a successful auction, the Debtors' business was sold as a going concern to SWT SPV LLC, d/b/a Curonix LLC ("Curonix"), effective as of October 31, 2022. [D.I. 500]. On March 21, 2023, the Bankruptcy Court entered an order confirming the Debtors' plan of liquidation [D.I. 768] (the "Plan"),[2] and the Plan became effective as of May 31, 2023. [D.I. 922] The general claims bar date in these cases was **September 19, 2022** [D.I. 159], and the administrative claims bar date established under the Plan was **June 30, 2023**.

---

[2]    References to docket items in the underlying bankruptcy cases are denoted as [D.I. __], references to docket items in adversary proceedings are denoted as [Adv. D.I. __], and references to docket items in the Chancery Court Action are denoted as [Ch. Ct. D.I. __].

9.      Pursuant to the confirmed Plan, the Debtors transferred substantially all of their remaining assets (the "Liquidating Trust Assets") to the Liquidating Trustee. The purpose of the Liquidating Trust is primarily to: (a) administer the Liquidating Trust Assets; (b) prosecute and resolve disputes and objections to claims and interests; (c) distribute the Liquidating Trust Assets after paying, reserving against, or satisfying the Liquidating Trust's operating and administrative expenses; and (d) wind down the Debtors' affairs. As a result of the Debtors' transfer of their books and records to the Liquidating Trust to facilitate its administration, the Liquidating Trust is also required to honor the Debtors' obligations to provide access to those records to the DOJ, the Federal Bureau of Investigation, the U.S. Food and Drug Administration, and other agencies in connection with the Debtors' settlement of a civil fraud lawsuit the DOJ commenced against the Debtors [D.I. 452]. That lawsuit remains pending against Laura Perryman.

10.      In March 2023, the U.S. Attorney's Office for the Southern District of New York announced the filing of a two-count Indictment charging Ms. Perryman with one count of conspiracy to commit wire fraud and health care fraud and one count of health care fraud in connection with a scheme to create and sell a non-functioning dummy medical device for implantation into patients suffering from chronic pain, resulting in millions of dollars in losses to federal healthcare programs.[3] On December 19, 2023, the Securities and Exchange Commission issued a press release announcing additional charges against Ms. Perryman for defrauding investors out of approximately $41 million by making false and misleading statements about that medical device.[4] The Liquidating Trust may also be called on to respond to subpoenas and

---

[3]      A copy of the DOJ's press release is attached hereto as **Exhibit A**. The case is *USA v. Perryman*, Case No. 1:23-cr-00117-DLC, pending in the U. S. District Court for the Southern District of New York.

[4]      A copy of the SEC's press release is attached hereto as **Exhibit B**. The case is *Securities and Exchange Commission v. Perryman*, Case No. 1:23-cv-10985-LGS, pending in the U. S. District Court for the Southern District of New York.

document requests in connection with those actions.[5]

### B. The Perrymans Have Been Willfully Engaging in a Pattern of Frivolous, Vexatious, and Baseless Litigation in Stimwave's Cases.

11.    As set forth below, throughout the course of these cases, Laura Perryman, Gary Perryman (her husband), Brandyn Perryman (her son), and affiliated or related entities controlled by them have submitted seriatim baseless and procedurally defective filings that have required the Debtors, the Liquidating Trustee, and other parties to expend substantial resources, depleting estate assets and continually delaying the administration of these cases.

12.    Most recently, after months of negotiations, in October 2023, the Perrymans agreed to mediation of their claims against these estates, then obtained extensions of the mediation date until January 15, 2024. On January 10, 2024, however, in willful disregard of the stipulated mediation order [D.I. 1036] entered by this Court, Gary Perryman announced that the Perrymans would not participate in the mediation and would, instead, launch a series of additional (and untimely) claims against these estates. *See* **Exhibit C.**

13.    These antics are not only materially interfering with and delaying the Liquidating Trustee's administration of these cases and its ability to establish reserves and make distributions to holders of allowed claims and interests but are imposing substantial costs on these estates to the detriment of legitimate creditors. If left unchecked, they threaten to bury the Litigation Trustee as well as the Court and its staff in frivolous, vexatious, and baseless litigation.

---

[5]    As noted in the DOJ press release, the various criminal charges against Ms. Perryman are merely accusations, and Ms. Perryman is presumed innocent unless and until proven guilty.

1. **The Perrymans Have Persistently Filed Baseless, Vexatious, and Frivolous Pleadings in These Cases**

   a. **Laura Perryman Has Filed Baseless Objections to Richards Layton's Employment in an Apparent Effort to Interfere with, Hinder, and Delay a Chancery Court Action Against Her**

14.     Since November 2019, Richards, Layton & Finger, P.A. has represented the Debtors in a Delaware Court of Chancery action[6] (the "Chancery Court Action") against Ms. Perryman and affiliated entities with respect to claims arising from alleged breach of fiduciary duty, aiding and abetting breach of fiduciary duty, conversion, tortious interference with contractual relations, and breach of contract.[7] On July 13, 2022, the Court entered an uncontested order approving the Debtors' motion to employ Richards Layton as an ordinary course professional. [D.I. 139].

15.     The Perrymans did not oppose the employment motion or appeal the Court's Order. When Richards Layton filed its declaration of disinterestedness in October 2022, however, Ms. Perryman filed both an objection [D.I. 479] and a sur-reply [D.I. 563] challenging  the firm's retention. The thrust of her objection was to challenge the merits of the Chancery Court Action, not Richards Layton's disinterestedness or the estates' ability to retain Richards Layton. In fact, Ms. Perryman asked the Court to order the Debtors to dismiss the Chancery Court Action. Although Ms. Perryman may raise any defenses she believes are appropriate in the Chancery Court Action, her defenses and opinions regarding the merits of the case were not a proper basis to

---

[6]     The case is *Stimwave Techs. Inc. v. Perryman et al.*, C.A. No. 2019-1003-SG (Del. Ch.).

[7]     On December 19, 2022, following the sale of the Debtors' assets to Curonix—including the claims asserted in the Chancery Court Action—Curonix, moved to substitute into the Chancery Court Action in place of Stimwave Technologies. [Ch. Ct. D.I. 575]. Ms. Perryman, however, has opposed the substitution, asserting that "KLIM cannot have it both ways- either they are the successor in interest, liable for the mistruths and slander of Stimwave in future recovery due to Perryman, or they are not the successor in interest-in which case, Stimwave, being debunked by the efforts of KLIM to wage their corporate takeover- should be dismissed in its entirety" [Ch. Ct. 610 at ¶5]. The Chancery Court has not yet ruled on the substitution motion. As a result, not only can the Debtors not terminate Richards Layton's engagement, but disputes regarding the Stimwave.com website that Curonix could otherwise have brought in the Chancery Court were recently brought before this Court by way of its motion to enforce the sale order [D.I. 1031] and a motion for contempt and sanctions [D.I. 1063].

challenge Richards Layton's disinterestedness or deny the Debtors' right to employ counsel. [D.I. 552]. In overruling Ms. Perryman's objections, the Court found that they were not relevant to Richards Layton's retention and unsupported by any factual or legal basis. *Id.* at pg. 9:2 – 10:8.

> **b. Gary Perryman Has Similarly Attacked Riveron Management Services, LLC and the Debtors' Chief Restructuring Officer**

16.    In a rambling pleading titled *Gary Perryman Limited Objection to Retention and Appointment of Riveron Management Services, LLC for Chief Restructuring Officer and Temporary Staff Without Removal of Debtor in Possession Status of Self Dealing Debtor* [D.I. 558], Mr. Perryman sought the appointment of a Chapter 11 trustee (¶¶ 11, 16, 17). In support, Mr. Perryman laid out numerous claims and legal contentions that do not appear to have, or to be likely to have, any evidentiary support and that appear designed principally to harass the Debtors' professionals and management team. In fact, many of these assertions are belied by the record in these cases. Among other things, Mr. Perryman asserted that:

- The Debtors' management team pillaged funds from the Debtors and their estates (¶7) and intentionally drained the estate prior to the Debtors' sale (¶3) to reduce the estate's value (¶6);

- The executive committee of the Debtors' board of directors received financial kickbacks from Kennedy Lewis (pg. 1);

- Riveron could not perform the services of CRO impartially and fairly because the Debtors' board of directors and management were conflicted and self-dealing and had no fiduciary duty to the Debtors' creditors;

- The Debtors' CEO was incompetent (¶4) and the Debtors' representatives were unable to answer basic questions about their business or operations at the 341(a) meeting (¶4);

- The Debtors refused to secure D&O insurance, and securing D&O insurance is required to commence a bankruptcy case (¶5);

- The Debtors' management team coordinated with Kennedy Lewis' counsel to ensure that the DOJ investigation would not be settled until after the Debtors' sale (¶6);

- The resignation of the Debtors' management team following the sale to Curonix was a farce (¶8);

- The Debtors' management team is defrauding the public by pretending the Debtors did not file for bankruptcy, merely changing their name to Curonix (¶8);

- The Debtors have no means to manage the wind down of their estates post-closing (¶3).

17.     After the Debtors filed their reply [D.I. 554], Mr. Perryman sent an email to Debtors' counsel withdrawing the objection [D.I. 560].

   **c.  Gary Perryman Caused Members of the Debtors' Management Team and This Court to Devote Significant Resources Responding to Claim Objections Only to Abandon Them the Day of the Hearing.**

18.     In March of 2023, Gary Perryman filed an objection [D.I. 741] to the claims of Jeffrey Goldberg, Marc Love, and Regina Groves asserting, among other things, that they had "wasted millions of dollars of the Debtor's funds . . . in their failed crusade to fabricate . . . fake claims against the Perrymans" (¶ 1) and "orchestrat[ing] the demise of the Debtor's Operations (¶ 3.). Mr. Perryman filed numerous motions, including emergency motions, and sought and obtained extensive discovery with respect to his objections. *See, e.g.,* D.I. 764, 765, 766, 781, 818, 831, 832, 833, 846, 847, 850, 852, 858, 868, 878, 882, 885, 886, 889, and 890. After the Court denied his motion to vacate the hearing [D.I. 881], on May 3, 2023, the creditors and their counsel and witnesses, as well counsel for the Debtor and the Official Committee of Unsecured Creditors (the "Committee") appeared at the hearing as scheduled. The Court observed that there had been a lot of activity on the docket, procedurally there was a lot of confusion around the hearing, and only that morning the Court and the parties had received a notice of withdrawal of Mr. Perryman's claim objection. Noting that it found "Mr. Perryman's behavior in the matter offensive to the Court and extremely disrespectful to the parties involved," the Court nonetheless determined that the matter could not go forward in light of the withdrawal. (D.I. 897 at pg. 16:1-4).

       **d.  Laura Perryman Has Baselessly Sought to Strike Negative References to Her Actions or Character from the Record in These Cases.**

19.     In November 2023, Laura Perryman filed a *Motion to Strike Fraudulent Statements and Exhibits Produced by Debtor* (the "Motion to Strike"). [D.I. 535]. In that motion, Ms. Perryman complained about "numerous negative inferences" towards her. *Id.* at ¶ 3. She requested that the Court strike from the sale order and the record statements suggesting that the bankruptcy was filed due to mismanagement by management, *Id.* at ¶ 8, or that she had engaged in violations of regulations, *Id.* at ¶ 9, as well as other negative references to her actions or character. *Id.* at pg. 5. Ms. Perryman's motion lacked any legal or factual basis, was an untimely attempt to challenge final and non-appealable orders, and sought to strike from the record statements that were not made by the Debtors. [D.I. 553]. Furthermore, statements made by or attributable to the Debtors are protected by the litigation privilege doctrine.[8] In overruling the objection, the Court held that, as a general matter, Rule 12(f) is not applicable to a contested matter, and even if the Court were to apply Rule 12(f), upon listening to the arguments and reviewing the statements filed by the parties, none of the appropriate standards of Rule 12(f) were met. [D.I. 569 at pg. 18-19].

       **e.  Laura and Gary Perryman Filed a Frivolous Objection to Approval of the Debtors' Disclosure Statement and a Virtually Identical Motion for Injunctive Relief as Vehicles to Relitigate the Motion to Strike**

20.     Laura and Gary Perryman thereafter objected to approval of the Debtors' disclosure statement [D.I. 672], launching into another diatribe against the Debtors, their management team, and their professionals. The objection asserted—again without factual support—that the disclosure

---

[8]    The litigation privilege doctrine protects statements made in Court proceedings that are "related in some way to the subject of the controversy." *See In re Davis*, 312 B.R. 681, 689–90 (Bankr. D. Nev. 2004) ("The litigation privilege is a 'long-standing common law rule that communications uttered or published in the courts of judicial proceedings are absolutely privileged.' The policy behind the rule is to grant attorneys and other participants in judicial proceedings 'the utmost freedom in their effort to obtain justice....'") (citations omitted).

statement was "a smoke screen" to obtain sweeping releases of Debtors' directors, officers, and professionals "who have engaged in . . . fraud, bribery, extortion, corruption, collusion, conversion, tortious interference, false claims, breach of contract, breach of fiduciary duty, willful misconduct, gross negligence, fraudulent misrepresentation, embezzlement, and malicious prosecution." *Id.* at ¶¶ 2, 5. They accused Richards Layton of participating proactively, if not orchestrating, "the illegal takeover" of the Debtors and advising the Debtors' board to participate in illegal activities. *Id. at* ¶ 6. The bulk of the objection set forth the Perrymans' position regarding the DOJ inquiry, seemingly accusing the Debtors' management team of fabricating the DOJ investigation as part of a "scorched earth hate campaign" against Laura Perryman, *Id.* at ¶¶ 4, 7-12, and asserting that the Debtors' board and management are maliciously conspiring to defame her, *Id.* at ¶¶ 18-33. As set forth in the Debtors' response [D.I. 679], not only were the Perryman's statements unsupported by any evidence and irrelevant to the determination of whether the disclosure statement contains "adequate information," but the Perrymans had rejected the Debtors' proposal to address their concerns by including a position statement from the Perrymans.

21.    In overruling the Perrymans' objection, the Court noted that it was two-fold. In part, it was an untimely objection to plan confirmation and the plans' proposed releases. [D.I. 701, pg. 20:18-21:5]. In part, it was a motion to strike portions of the disclosure statement. The Court noted that the Perrymans had already asked the Court to strike the underlying declaration that was the source of the statements, and the Court had denied that request. The Court held that the new objection was an improper "second bite at the apple" and should be denied. *Id.* at pg. 21:6-15.

22.    Laura Perryman also filed a *Motion for Injunctive Relief Prohibiting and Enjoining Reference to Non-Debtors and Request to Set Order to Show Cause Hearing* [D.I. 690] seeking to enjoin the Debtors from including substantially the same material in the disclosure statement. This

new motion also asserted that the Court lacked jurisdiction to enter a final order approving the disclosure statement and that its approval would deny her of due process. Ms. Perryman never set the motion for hearing.

**f. The Perrymans' Repeated, Overly Broad, and Duplicative Discovery Demands**

23.    On August 17, 2022, Gary Perryman, on behalf of himself and as the assignee of the rights of the Perryman Family Trust, filed a notice of a Rule 2004 examination of the Debtors [D.I. 253] without having sought and obtained an order authorizing the Debtor's examination under Bankruptcy Rule 2004. The improper notice sought broad-ranging discovery with respect to the Debtors' acts, conduct, or property; their liabilities and financial condition; any matter affecting the administration of these cases; any other matter relevant to these cases or the Debtors' plan; and 43 separate categories of documents and other items.

24.    On September 1, 2022, Gary Perryman, as "a Director of the Debtor and largest shareholder as the Trustee of the Perryman Family Trust" filed an expedited motion seeking an order under Bankruptcy Rule 2004 permitting discovery regarding a different, but equally extensive, list of documents. In support, Mr. Perryman asserted that "the basis for the bankruptcy itself is predicated upon fraud" and that the bankruptcy case is "simply a smokescreen to change the ownership holdings of the Debtor without paying a fair market value." [D.I. 294 at pg. 3]. The Debtors objected. [D.I. 328]. In denying the motion, the Court found that: (a) a trustee cannot proceed *pro se* on behalf of a trust; (b) Mr. Perryman's status as a director was insufficient to confer standing as a party in interest absent a legally protected interest such as a pecuniary or economic interest in or claim against the debtors; and (c) the discovery sought was unduly burdensome and would impede the pending sale. [D.I. 385 and 386, pg. 101-02].

25.    Most recently, on November 21, 2023, Gary Perryman, now "on behalf of himself

as a Creditor and largest shareholder of the Debtor, holding in excess of 23% of the outstanding fully diluted shares prior to the liquidation," filed a motion under Bankruptcy Rule 2004. [D.I. 1033]. In an odd twist on his prior assertion that the bankruptcy case was a ruse to deliver Stimwave to Curonix for less than fair value, this motion is based on Mr. Perryman's allegation that competing bidders were "planted" by *Curonix* to drive up the purchase price that it would ultimately pay and that, as part of this scheme, the Debtor contrived to incur excessive professional fees prior to the Petition Date. Based on that assertion, the motion seeks all accounting ledgers, financial reports, check register and check details, and invoices from legal service providers and accounting and financial service providers from 2019-2022.

26.    This motion, like Mr. Perryman's prior motion, is procedurally defective, frivolous, and unfounded. Among other things, to the extent that Mr. Perryman held equity interests in the Debtors, those interest were cancelled, and Mr. Perryman does not, on that account, have standing.[9] Moreover, all avoidance actions were sold to Curonix pursuant to the final, non-appealable sale order, which also included good faith findings with respect to Curonix's participation in the sale process. Even if there were a basis for the claims that Mr. Perryman has asserted, they do not belong to the Debtors' estate. Mr. Perryman has identified no interest that would be advanced by the discovery that he seeks.

**C. The Perrymans Have Asserted a Myriad of Unsubstantiated, Duplicative, and Procedurally Defective Claims Against these Estates.**

27.    The Perrymans have also asserted, and continue to assert, extensive claims against the Debtors' estates. These claims largely: (a) restate allegations and issues that have already been

---

[9]    All interests other than Class 4 (*i.e.,* the Equity Interests in Stimwave LLC, 100% of which are held by Stimwave, Inc.) and Class 5A (Existing Series E Preferred Interests, none of which are held by Mr. Perryman) were deemed without monetary value and cancelled, released, and extinguished under the confirmed Plan. Such interest holders will not receive any distribution or retain any property under the Plan or from the Liquidating Trust. *See* Article III.B of the Plan.

resolved (unfavorably to the Perrymans) with respect to prior filings; (b) are unsupported by any supporting documentation or evidence, even after objections have been made pointing out the lack of support; and (c) are duplicative of one another, with claims set forth in proofs of claim being refiled in the form of adversary proceedings. Moreover, the Perrymans appear to believe their ability to file claims is unconstrained by the existing bar dates approved by this Court.

### a. The Unsubstantiated Claim of the Perryman Family Trust (POC #17)

28. In August 2022, the Perryman Family Trust filed a Proof of Claim asserting a general unsecured claim of "$4,000,000 or unknown" based on common shares of stock purportedly assigned to it. The Claim included no supporting documentation. In September 2022, the Debtors, joined by the Committee, filed an objection seeking to disallow the "claim" on the grounds that the ownership of common stock does not qualify as a claim within the meaning of the Bankruptcy Code. [D.I. 314, 353]. The Perryman Family Trust initially responded by asserting that the objection had been filed "solely out of revenge for the Director bringing up the Medicare billing fraud scheme" and to "strip the value of the shares from" Mr. Perryman. [D.I. 423] Subsequently, however, Mr. Perryman withdrew the claim. [D.I. 441].

### b. The Stimguard Claim, as Assigned to Brandyn Perryman (POC #59).

29. Stimguard, LLC has asserted a general unsecured claim against the Debtors in the amount of $585,826.00 in connection with sales of Stimguard LLC products to customers facilitated through the Debtor, loan funds provided to the Debtor, and amounts paid to a third-party vendor for equipment assigned to the Debtor instead of Stimguard. As set forth in the Debtors' objection, the claim is not supported by proper documentation, either demonstrating liability or the specific amount claimed. Moreover, the claim is contradicted both by the sparse documentation provided and by the Debtor's books and records (which were maintained under Laura Perryman's control and supervision during the relevant periods). [D.I. 733].

14

30.     Brandyn Perryman responded to the objection on April 19, 2023. [D.I. 849]. After several continuances, on March 31, 2023, the objection was noticed for hearing on June 13, 2023 [D.I. 810], which notice was served on Stimguard on April 7, 2023. [D.I. 848]. Later in April, Brandyn Perryman filed a notice indicating that he had been assigned the Stimguard claim. [D.I. 835]. On June 9, 2023, the Liquidating Trustee sought to meet and confer with Mr. Perryman, at which time Mr. Perryman advised that he was not aware the matter had been set for hearing. [D.I. 935]. On June 12, 2023, Mr. Perryman filed a unilateral *Notice of Adjournment to July 2023 Agreement and Objection to Amended Agenda filed by Trust* [D.I. 945] (also indicating that he was considering filing "an adversary proceeding for the claim").[10] As no adjournment had been agreed to, the Liquidating Trustee's counsel and witness appeared at the hearing prepared to move forward. The Court found that the record reflected that proper notice of the hearing had been provided to Mr. Perryman nearly three months prior and that further adjournment was not appropriate. However, when Mr. Perryman indicated interest in mediating the various Perryman claims, the Liquidating Trustee agreed to an adjournment to pursue mediation. A week prior to the scheduled mediation this month, however, the Perrymans abruptly informed the mediator—in willful violation of this Court's mediation order—that they refused to participate.

### c. The Laura Perryman Unpaid Wages Claim (POC #54 & 55) and Adversary Proceeding (Adv. Proc. No. 23-50322)

31.     Laura Perryman has asserted two substantially identical general unsecured claims against the Debtors totaling approximately $1.2 million for alleged unpaid wages, including a $100,000 bonus and $400,000 in severance. As set forth in the objection thereto [D.I. 734], the

---

[10]   *See also* the *Motion to Stay Pending Mediation, Assignment of Mediator and Objection to Unilateral Hearing Request Regarding Claim #59* [D.I. 989] and *Stimguard LLC (Brandyn Perryman) Motion to Vacate Unilateral Hearing Request Regarding Claim #59 and Notice of Filing of Adversary Proceeding* [D.I. 998], both of which are baseless, procedurally defective, and largely duplicative (indeed, "triplicative") of the adjournment notice.

claim is not supported by proper documentation and is contradicted by the Debtors' books and records, which show that Ms. Perryman was paid her salary in the ordinary course and that no amounts are owed. Moreover, Ms. Perryman is not entitled to severance as she resigned from her employment after being placed on administrative leave based on allegations of wrongdoing and just prior to being terminated for cause.

32.    Ms. Perryman subsequently assigned the claim to Brandyn Perryman, [D.I. 803], who then commenced an adversary proceeding asserting substantially the same claims.[11] After the Liquidating Trustee pointed out in a motion to dismiss the complaint that the wage claim was not assignable, Brandyn Perryman purported to assign the claim to himself *and* Laura Perryman. [D.I. 974]. He thereafter filed an amended complaint improperly joining Ms. Perryman as a plaintiff. Now both Brandyn Perryman and Laura Perryman jointly seek to recover on the claim. [Adv. D.I. 21]. The Liquidating Trustee has twice moved to dismiss the claims (filing a second motion to dismiss after the complaint was amended to add Ms. Perryman as a plaintiff), and the motion to dismiss the amended complaint remains pending. [Adv. D.I. 21, 34, 35]

33.    Contemporaneous with the filing of the amended complaint, the Perrymans also filed a motion to withdraw the reference with respect to the adversary proceeding to the United States District Court. If this (frivolous) motion were to be granted, it would result in duplicative proceedings, with this Court left to determine the proof of claim in these bankruptcy cases while the District Court determines the same claim as asserted in the adversary proceeding.

d.    **The Gary Perryman Administrative Claim (D.I. 976) and Adversary Proceeding (Adv. Proc. No. 23-50750-TMH).**

34.    Gary Perryman, as the sole member of LTP Limited LLC, has asserted an

---

[11]    The Brandyn Perryman Adversary Proceeding, as amended, differed from the proof of claim to the extent that it named Tim Stallkamp, Auru Bruneau, and Regina Groves as additional defendants. The claims against these co-defendants were subsequently either dismissed by the Court or withdrawn by amendment of the Complaint.

approximately $74,000 administrative claim seeking indemnification and payment of legal fees incurred by LTP in connection with two non-bankruptcy cases as well as its preservation of rights in these Chapter 11 cases. As set forth in the pending objection [D.I. 986], the claim is untimely (having been filed on July 13, 2023, following expiration of the bar date), unsubstantiated, and for a variety of other reasons not legally proper. On October 25, 2023, Gary Perryman commenced an adversary proceeding setting forth substantially the same claims. [D.I. 1018]. The complaint and summons have not been served on the Liquidating Trustee. And on November 16, 2023, Mr. Perryman filed a baseless motion to withdraw the reference with respect to this proceeding to the United States District Court.

e.  **The Laura Perryman Administrative Claim (POC #104, 106 & 107).**

35.     On or about June 28, 2023, Laura Perryman filed three substantially identical proofs of claim each in the amount of approximately $17.4 million for post-petition defamation, slander, and libel. (POC #107 includes a *Request for Payment of Administrative Claim* that does not appear to have been noticed for hearing or filed on the docket). Ms. Perryman has indicated that she also intends to file an adversary proceeding reasserting these claims. In support thereof, Ms. Perryman has provided only the following unsupported statement:

> The Debtor has made numerous, untrue, egregious statements to industry colleagues, doctors, facility personnel, and reporters post-petition throughout the later half of 2022 and continuing in 2023 stating that the Claimant invented a PNS system that comprised of a "Lead" and a "Pink Stylet" as the primary devices, that the PNS system would not "work" without the Pink Stylet, that the Claimant included an additional stylet component with no medical purpose that was not FDA cleared and that the Claimant told doctors to seek reimbursement solely for the "Stylet." These statements are untrue and not what the Claimant invested or had 510k clearance for, which was the Stimulator Receiver System with an embedded receiver with optional accessories, but the Debtor has made these statements with the willful intent to defame the Claimant.

36.     This claim appears, in part, to be a further effort to relitigate this Court's prior decisions regarding her motion to strike. Moreover, in its prior determinations, the Court

determined that the record in these cases does not contain impertinent or scandalous allegations or statements that reflect cruelly on plaintiff's moral character or repulse or distract from the dignity of this Court. [D.I. 569, pg. 18:20-19:9]. Moreover, what Ms. Perryman appears to be asserting, without evidence or likely evidence, is that the Debtors' management team, as part of a "scorched earth hate campaign," contrived to create a false factual record sufficient to hoodwink the DOJ and the SEC into pursuing a "fake" civil action against her under the False Claims Act, file a "fake" Indictment charging her with conspiracy to commit wire fraud and health care fraud, and bring "fake" charges against her for defrauding investors in connection that scheme. This would also require one to believe that the animus of the Debtors against Ms. Perryman was so strong that they would falsely admit to participation in a criminal scheme and plunge the company into bankruptcy to destroy Ms. Perryman's career. A conspiracy theory of this magnitude strains the imagination.

### f.  The Laura Perryman Advancement and Indemnification Claim.

37.     On November 13, 2023—*over four months after the administrative claims bar date*—Laura Perryman sent correspondence to the Liquidating Trustee demanding indemnification and advancement of legal costs in connection with certain litigation commenced against Ms. Perryman by Kennedy Lewis Investment Management LLC in connection with her role as CEO of the Debtor. No claim or adversary proceeding has yet been filed, and the claim is disputed. However, Ms. Perryman has indicated that she intends to file an administrative claim, a duplicative adversary proceeding, and a motion to expedite this matter.

### D.  The Perrymans Have Refused to Attend the Court Ordered Mediation Conference With Respect to their Claims

38.     After extensive discussions regarding mediation before and after June 2023, on November 29, 2023, the Liquidating Trustee and the Perrymans submitted a stipulation [D.I. 1034], which was approved by Order of this Court [D.I. 1036], staying all matters brought by the

Perrymans so that the parties could participate in mediation. The Perrymans thereafter requested and obtained an extension of the mediation date until January 15 or 22, 2024. But as noted above, on January 6, 2024—in willful disregard of this Court's mediation order—Gary Perryman announced that the Perrymans refuse to attend the mediation and intend, instead, to launch a torrent of additional claims against these estates.

### E. Continued Litigation and Disbarment Threats

39.     In addition to the numerous new, baseless, and duplicative proceedings threatened by the Perrymans that have been noted above, the Perrymans have also threatened to appeal this entire bankruptcy to the Supreme Court. For example, at the November 2022 hearing regarding her motion to strike, Ms. Perryman informed the court that, if her motion was not granted, she would "bring not only a defamation case, but [] may bring an appeal to this entire bankruptcy with a lawyer." *See* D.I. 569, pg. 16:19-22. Similarly, at the hearing to consider approval of the Debtors' disclosure statement, Gary Perryman threatened that, if the Court did not order the Debtors to remove statements that the Perrymans did not like or agree with: "It's got to be another three years before this over and will be settled. . . . it's going to go into a higher Court until we have it heard by the highest Court that needs to be heard. We don't care how long it takes." *See* D.I. 701,  pg. 12:10-19; *see also* pg. 15:14-15, pg. 17:19-23, pg. 18:15-16.

40.     And on January 9, 2024, the Court requested counsel to the Liquidating Trustee to notify the parties to the hearing set on the *Motion of Curonix LLC to Enforce the Order (I) Approving the Sale of Debtors' Assets Free and Clear of Lines, Claims, Interests, and Encumbrances; (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith; and (III) Granting Related Relief* ("Curonix APA Motion") [D.I. 1031] that the Court would permit remote appearances on account of inclement weather. Upon receiving this notice from Ms. Kurth, together with a copy of the hearing agenda,

Ms. Perryman responded by email stating (incorrectly) that she is not a party to that matter and that: "I will hire a lawyer, file a harassment lawsuit against you personally and Akin Gump, and I will file grievances with the bar association against you Mette and Ms. Lindemuth immediately TODAY.  I suggest you withdraw your ridiculous motion against non-parties.  You are supposed to be an officer of the court, meaning to spite your offshore clients wishes and bankroll, you do the right thing." *See* **Exhibit D.**

> **F. The Perrymans Are Well Aware of the Consequences of Pursuing Frivolous, Vexatious, and Baseless Litigation, as Their Conduct Here is a Continuation of Their Tactics in Other Cases, Including a Prior Bankruptcy Case in Which Laura Perryman Was Subjected to Both Monetary and Non-Monetary Sanctions**

41.     In July 2021, the subchapter V Trustee of the estate of Micron Devices, Inc, filed a motion seeking monetary and non-monetary sanctions against Laura Perryman in the form of a pre-screening injunction prohibiting her from future *pro se* filings without first obtaining leave of the Court. As basis for that relief, the Trustee demonstrated that, throughout the course of the bankruptcy case, Ms. Perryman had filed frivolous and baseless motions and pleadings as well as an adversary proceeding wherein she sued the Trustee (and his counsel) for exercising his duties in accordance with the Court's orders. That conduct, the Trustee noted, was a continuation of her tactics in previous litigation in which she filed suit in the Delaware Chancery Court on a falsified document and, in another Delaware Chancery Court case, was found to have frustrated the discovery process by unilaterally declaring that discovery may not proceed. The Court issued an order granting the Trustee's request for both monetary sanctions and a pre-screening injunction.[12] The Court's published opinion, which can be found at *In re Micron Devices, Inc*., 638 B.R. 649 (Bankr. S.D. Fla. 2021), is discussed in greater detail below. Apparently undeterred, the course of

---

[12]    Ms. Perryman's appeal of that order was dismissed due to her failure to prosecute, reinstated, and then abandoned when the case was converted to a case under chapter 7 and ultimately closed.

conduct engaged in by Ms. Perryman in the *Micron Devices* case is strikingly similar to the conduct

now displayed by her in tandem with her husband, son, and entities they control, as outlined above.

42.    Notably, Ms. Perryman's history of frivolous and baseless pleadings has not been

limited to the *Micron Devices* bankruptcy case. Ms. Perryman has a track record of being untruthful

with other courts. *See Nevro Corp. v. Stimwave Techs., Inc.*, 2019 WL 3322368, at *7 (D. Del. July

24, 2019) (finding Ms. Perryman gave "patently false" testimony); *Perryman v. Stimwave Techs.,*

*Inc.*, 2020 WL 7240715, at *10 (Del. Ch. Dec. 9, 2020) (determining Ms. Perryman's

indemnification agreement was not executed on the date she represented it was executed), *id*.

(noting that "the evolving and self-serving narrative of the kitchen-table executions makes me

suspicious as to [the] truth . . . Laura did not, in my opinion, testify truthfully . . . .").

## **ARGUMENT**

### **A. This Court Has the Power to Curb Vexatious Actions by Establishing Protocols for Future Filings.**

43.    It is well established in the Third Circuit that the district courts, as well as the

adjunct bankruptcy courts, have the power to curb abusive, groundless, and vexatious conduct.

The All Writs Act provides the district and bankruptcy courts with the authority to enjoin abusive,

groundless, and vexatious litigation by *pro se* litigants by enjoining further filings of complaints

without the permission of the court where: (1) the litigant has been continually abusing the judicial

process; (2) the litigant is given notice of the potential injunction and an opportunity to oppose the

court's order; and (3) the injunction is narrowly tailored to fit the specific circumstances of the

case. Section 105 of the Bankruptcy Code similarly provides this Court with the inherent authority

to impose sanctions on parties to regulate its docket, promote judicial efficiency, and deter abuse

of the judicial process. The Third Circuit Court of Appeals has further recognized that district

courts (which would include their adjunct bankruptcy courts) are expressly empowered to address

the vexatious actions of *pro se* litigants, even if such conduct does not fall squarely under a specific statute or federal rule, through the exercise of their inherent powers.

**1. The All Writs Act Provides This Court With Authority to Enjoin Abusive, Groundless, and Vexatious Litigation.**

44.     The All Writs Act, 28 U.S.C. 1651(a), authorizes all courts established by act of Congress to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."[13] Since Congress has established bankruptcy courts as adjuncts of the district courts pursuant to 28 U.S.C. § 151(a), the All Writs Act applies with equal applicability to the district courts and to their adjunct bankruptcy courts.

45.     It is well established in the Third Circuit that, pursuant to the All Writs Act, a district court may enjoin "abusive, groundless, and vexatious litigation." *Brow v. Farrelly,* 994 F.2d 1027, 1038 (3d Cir. 1993); *see also Abdul-Akbar v. Watson,* 901 F.2d 329, 332 (3rd Cir. 1990); *In re Oliver,* 682 F.2d 443, 445 (3d Cir. 1982). As the Third Circuit has noted, "a continuous pattern of groundless and vexatious litigation can, at some point, support an order against further filings of complaints without the permission of the court." *In re Oliver,* 682 F.2d at 446.

46.     Because a pre-filing injunction is an exception to the general rule of free access to the courts, its use against *pro se* plaintiffs must be approached with caution. *See Brow,* 994 F.2d at 1038; *In re Oliver,* 682 F.2d at 445. In the Third Circuit, an appropriate balance is reached and a district court may enjoin a *pro se* litigant from future filings where the injunction complies with three requirements: (1) the litigant must be continually abusing the judicial process; (2) the litigant must be given notice of the potential injunction and an opportunity to oppose the court's order; and (3) the injunction must be narrowly tailored to fit the specific circumstances of the case. *See*

---

[13] 28 U.S.C. §165 1(a).

*Brow,* 994 F.2d at 1038. With regard to the last requirement, the Third Circuit has affirmed district court orders that impose pre-filing screening requirements on *pro se* litigants. *See, e.g., Grossberger v. Ruane,* 535 F. Appx. 84, 87 (3rd Cir. 2013) (not precedential) (affirming order enjoining *pro se* litigant from filing additional pleadings without pre-screening by the court); *Abdul-Akbar,* 901 F.2d at 332 (affirming injunction requiring *pro se* litigant to obtain court approval before further filings).

47.     Bankruptcy courts have entered similar orders. *See, e.g., In re International Power Securities Corp.*, 170 F.2d 399 (3rd Cir. 1948) ("Clearly the creation of the bankruptcy court is pursuant to "Act of Congress" therefore the bankruptcy court may use the All Writ Statute, 28 U.S.C. § 1651, in aid of their respective jurisdictions. The power of a bankruptcy court to protect by injunction the subject matter of its jurisdiction is inherent in the court as a virtual court of equity and existed as well by virtue of this Section."). Thus, in *In re Agrawal*, Case No. 16-11253, filed in the U.S. Bankruptcy Court for the Western District of Oklahoma, the bankruptcy court found the *pro se* debtor to be a vexatious litigant and entered an order, referred to as a "Screening Order," which required Agrawal to obtain leave/authorization from that court prior to filing any further pleadings.  Notably that court relied upon *In re International Power Securities Corp.*, 170 F. 2d 399, 402 (3d Cir. 1948), among other cases, as support for its authority to enter such an order.

48.     In *In re United States Corp. Co.*, 2021 LEXIS 745, 2021 WL 1100078 (Bankr. N.D. Fla., Jan. 22, 2021), the bankruptcy court declared a *pro se* party to be a vexatious litigant after she filed two bankruptcy cases and three adversary proceedings in the court after being declared a vexatious litigant by the District Court for the Middle of Florida.  The court sanctioned the party by entering an injunction permanently enjoining her from initiating any matter or filing any papers in the court without prior approval from the court, to be obtained by following a specified pre-

screening procedure. *Id*. at \*8-11. *See also In re Nyamusevya*, 654 B. R. 581, 589-91 (Bankr. S. D. Ohio 2023) (bankruptcy court held debtor to be a vexatious litigator after numerous filings in state and federal courts and imposed pre-filing restrictions as to future pleadings).

**2. The Court Also Has Authority to Enjoin the Perrymans from Future Filings Pursuant to Its Inherent Authority, Under Section 105, and Under Rule 9011.**

49.     Section 105 of the Bankruptcy Code provides that the bankruptcy courts may take *any action* "necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a). The Court's inherent authority includes "the ability to fashion an appropriate sanction for conduct which abuses the judicial process," including when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Citrix Systems, Inc. v. Workspot, Inc.,* 2020 U.S. Dist. LEXIS 180673, \*18-19 (D. Del. September 25, 2020) (quoting *Chambers v. Nasco, Inc.,* 501 U.S. 32, 33 (1991)). "Federal courts may exercise their inherent power `to impose sanctions on both litigants and attorneys to regulate their docket, to promote judicial efficiency, and to deter abuse of judicial process.'" *Id.* at \*19 (citing *In re Intel Corp. Microprocessor Antitrust Litig.,* 562 F. Supp. 2d 606, 610-11 (D. Del. 2008) (quoting *Quiroga v. Hasbro, Inc.,* 934 F.2d 497, 505 (3d Cir. 1991)).

50.     Bankruptcy Rule  9011 provides that, when presenting a paper to the Court, an unrepresented party is certifying that to the best of his or her knowledge, information, and belief, formed after reasonable inquiry under the circumstances, not only that the claims, defenses and other legal contentions are warranted and have or are likely to have evidentiary support but that they are not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. Fed. R. Bankr. P. 9011(b). The Court may, on its own initiative, enter an order describing the specific conduct that appears to violate Bankruptcy Rule 9011(b) and directing a party to show cause why it has not violated Bankruptcy Rule 9011(b).

Fed. R. Bankr. P. 9011(c)(1)(B). If the Court determines that Bankruptcy Rule 9011(b) has been violated, it may impose an appropriate sanction upon the parties responsible for the violation, provided that such sanctions are limited to what is sufficient to deter repetition of such conduct, including directives of a nonmonetary nature. Fed. R. Bankr. P. 9011(c) and 9011(c)(2). Violative conduct includes filings that are presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation, as well as filings that include allegations and other factual contentions that lack evidentiary support. *See* Fed. R. Bankr. P. 9011(b). The district courts are provided with similar powers under Rule 11 of the Federal Rules of Civil Procedure.

51.     The Third Circuit has further recognized that district courts are expressly empowered to address the vexatious actions of *pro se* litigants, even if such vexatious conduct does not fall squarely under a specific statute or federal rule, through the exercise of their inherent powers. *See Inst. for Motivational Living, Inc. v. Doulos,* 110 Fed. Appx. 283, 186-87 (3rd Cir. 2004) (affirming sanctions granted against *pro se* litigant for vexatious and unreasonable behavior under 28 U.S.C. § 1927 without deciding whether that statute applies to *pro se* litigants because district court could have awarded sanctions under its inherent authority).

52.     In fact, in *In re Micron Devices, Inc*., the Bankruptcy Court found Laura Perryman*,* throughout the course of that bankruptcy case, had "repeatedly filed frivolous and baseless pleadings with the Court that were untimely, asserted facts not before the Court, attempted to relitigate issues already decided, and improperly sought relief on behalf of third parties." *Id.* at 652. The examples of filings set forth in its opinion included a motion to quash that was withdrawn; continuing to propose to act as the debtor's representative after resigning; filing several motions on behalf of the debtor or third parties with respect to matters that did not involve her; filing an

untimely objection laying out facts never been introduced into evidence; attempting to relitigate numerous issues; seeking to compel a deposition that had not been property scheduled or noticed; improperly suing the Trustee and his counsel on the basis of allegations that were on their face untrue; filing a motion to withdraw the reference of an adversary and then dismissing that adversary proceeding when she learned it would likely remain before the Court until trial; seeking to continuing hearings in that adversary hearing until after a hearing on her motion to withdraw the reference, and alleging that the Court had a conflict. *Id.* at 652-54.

53. Based on Ms. Perryman's conduct, the Court found that it had the authority to enjoin her from future filings with the Court pursuant to its inherent authority, under section 105, and under Rule 9011. *Id.* at 657 (citing *In re Evergreen Sec., Ltd.,* 570 F.3d 1257, 1263 (11th Cir. 2009) ("Federal courts, including bankruptcy courts, possess inherent authority to impose sanctions. . . . This power is derived from the court's need to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases."). The Eleventh Circuit has held that the inherent authority to sanction includes pre-filing restrictions such as enjoying future filings without leave of the court. *Id.* at 657 (citing *Martin-Trigona v. Shaw*, 986 F.2d 1348, 1386-87 (11th Cir. 1993); *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277 (11th Cir. 2002)).

54. The Court noted that to impose sanctions under the court's inherent power, the court must find bad faith. *Id.* (citing *Riccard v. Prudential*, 307 F.3d at 1273). A bad faith finding turns not on the party's subjective intent but on her objective conduct. *Id.* at 655 (citing *Amlong & Amlong, P.A. v. Denny's, Inc*., 500 F.3d 1230, 1239 (11th Cir. 2007)). "A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument . . . . A party also demonstrates bad faith by delaying or disrupting the litigation . . . . Further, continually advancing 'groundless and patently frivolous litigation' is 'tantamount to bad faith.'" Id. at 1273-74 (internal

citations omitted). Finding that Ms. Perryman had been repeatedly warned regarding her filing of baseless pleadings, raising issues already adjudicated, and raising arguments on behalf of third parties, the Court found her to have demonstrated bad faith by delaying the litigation in the *Micron Devices* case by continuously advancing groundless arguments and issued non-monetary sanctions in the form of a pre-screening injunction prohibiting substantially similar to the proposed Filing Protocols. *Id.* at 657-58.

**B. The Perrymans Have Repeatedly Sought to Interfere With, Unreasonably Prolong, and Unnecessarily Increase the Cost of These Cases to the Detriment of All Interested Parties, and This Court Should Establishing Protocols for Future Filings.**

55. Just as in *Micron Devices*, throughout the course of these cases, Laura Perryman together with her husband, her son, and entities controlled by them, have, among other things, repeatedly filed frivolous and baseless pleadings that were untimely, asserted facts not before the Court, attempted to relitigate issues already decided, and improperly sought relief on behalf of third parties. Nor has Ms. Perryman's conduct improved in any respect since she was sanctioned by the Court in *Micron Devices*. To the contrary, as evidenced by the examples of improper filings described above, the vexatious conduct in these cases is considerably more extensive. Undeterred, Ms. Perryman has also continued to threaten professionals in this case with litigation, malpractice claims, and disbarment for even simple actions such as providing parties with notice, pursuant to the Court's instructions, that they might appear remotely in a matter. Inasmuch as the Court in *Micron Devices* noted that Ms. Perryman had improperly sued the trustee and his counsel on the basis of allegations that were patently untrue, these types of statements by the Perrymans should not be taken as mere idle threats.

56. The record in these cases clearly demonstrates that Ms. Perryman is in close communication with her husband and her son and that they are working together to pursue their positions and claims as a family. They have regularly appeared on behalf of one another at hearings

and status conferences where they have spoken for one another. The record establishes that they are in close contact regarding these cases and taking coordinated actions as a family unit. And they have been freely transferring claims among one another and entities that they control to suit their purposes and seek litigation advantage. As such, it is inconceivable that Gary and Brandyn Perryman were not aware of the actions that Ms. Perryman was taking in the *Micron Devices* case or that they are unaware of the sanctions order entered against her by that Court. Even if Gary and Brandyn Perryman disavow knowledge of the prior sanctions order, Ms. Perryman is not unaware of it, having filed a notice of appeal, and Ms. Perryman is acting in concert with her husband, son, and their controlled entities. The transcripts of the various hearings in these cases are also replete with admonishments from the Court that numerous filings, similar to Ms. Perryman's filings in *Micron Devices*, have been groundless and patently frivolous for many of the same reasons articulated by the *Micron Devices* court. It is therefore clear that the Perrymans are proceeding in bad faith in these cases by knowingly or recklessly raising frivolous arguments despite being aware of the impropriety of their filings and the potential for sanctions, including through the implementation of Filing Protocols such as the ones proposed by the Litigation Trustee. And as in *Micron Devices*, it is well within this Court's inherent authority, as well as its powers under Section 105 of the Bankruptcy Code and under Bankruptcy Rule 9011, to adopt the Filing Protocols to promote judicial efficiency and discourage any future frivolous or abusive filings.

57.    The issuance of non-monetary sanctions in the form of the Filing Protocols also falls with this Court's authority under the All Writs Act. The Third Circuit found that under the All Writs Act the district courts—and by extension, the bankruptcy courts—may, where there has been a continuous pattern of groundless and vexatious litigation, as here, issue an order prohibiting further filings without the permission of the court. The Liquidating Trustee has demonstrated that

the factors required in the Third Circuit to enjoin filings by a *pro se* litigant have been met in these cases. First, the Perrymans have been continually abusing the judicial process not only in the Debtors' cases but in at least one other bankruptcy case and two separate cases before the Delaware Chancery Court. Second, the Perrymans have been given notice of this Motion, the requested injunction, and opportunity to oppose it. And third, the injunction is narrowly tailored to fit the specific circumstances of the Debtors' cases, closely following the Filing Protocols previously imposed in the *Micron Devices* case, which is based on substantially similar conduct and consistent with pre-screening orders issued by district and bankruptcy courts in the Third Circuit and elsewhere.

## NO PRIOR REQUEST

58.     No prior request for the relief sought in this Motion has been made by the Liquidating Trustee to this or any other court.

## RESERVATION OF RIGHTS

59.     Nothing in this Motion is intended or should be construed as a waiver or limitation of any of the Liquidating Trustee's rights under the Bankruptcy Code or other applicable law, including its rights to object to, and oppose allowance of, any claims or interests in these Chapter 11 proceedings or to seek monetary sanctions in connection with the actions of the Perrymans.

**WHEREFORE**, the Liquidating Trustee respectfully requests that the Court enter an Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

*[Remainder of Page Intentionally Left Blank]*

Date: January 13, 2024

/s/ Mette H. Kurth

Mette H. Kurth (DE Bar No. 6491)
**CULHANE MEADOWS, PLLC**
3411 Silverside Road
Baynard Building, Suite 104-13
Wilmington, Delaware 19810
Telephone:     (302) 289-8839 Ext. 100
Email: mkurth@cm.law

*Counsel to the Liquidating Trustee*