IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>STIMWAVE TECHNOLOGIES INCORPORATED[1], *et al.*,<br><br>Debtors.<br><br>BRANDYN PERRYMAN<br><br>Plaintiff<br><br>Vs.<br><br>STIMWAVE TECHNOLOGIES INCORPORATED, STIMWAVE LLC, REGINA GROVES, ASHLEY LAPOINT<br><br>Defendants | Chapter 11<br>Case Nos. 22-10541 (KBO), et seq.<br>(Jointly administered)<br><br><br>Adv Proc No. _____ |

## COMPLAINT

### Introduction

1.  Assignee Brandyn Perryman has been assigned all rights to Claim 59 from the Claimant StimGuard LLC, and is herein referred to as "Claimant", as shown in

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are Stimwave Technologies Incorporated (7426) and Stimwave LLC (5018) The Debtors' headquarters are located at 1310 Park Central Blvd. S. Pompano Beach, Florida 33064

**Exhibit A.** As detailed below, Stimwave Technologies Incorporated, herein referred to as the "Debtor", and StimGuard LLC were sister companies who occupied the same physical headquarters for over 5 years from 2014 to 2019. Both companies had primarily the same services agreement with a service provider Company, called Micron Devices LLC, and both companies utilized staff from Micron Devices LLC.

2. StimGuard was an early-stage company conducting clinical research studies for the treatment of urological disorders, including overactive bladder and urological pain. StimGuard conducted studies primarily utilizing shared staff between the entities. Specifically, for many of the urology cases, the services of Ashley LaPoint, an employee of Stimwave LLC were utilized. Ms. LaPoint intentionally billed StimGuard's customers as if they were Stimwave's customers instead, so that she could earn commissions of the clinical cases utilizing clinical study products to enrich herself, even though she knew these products were NOT Stimwave products but were StimGuard products.

3. Accordingly, notice was given to Stimwave several times in early 2020 by StimGuard, as detailed below, interfacing with Defendant Regina Groves, Stimwave's CFO and COO, who refused to reply with an answer as to why would not pay the monies owed to StimGuard. Ms. Groves, also as an individual, tortiously interfered intentionally with StimGuard's business operations, flow of product,

payroll, and CE Mark granted for the StimGuard Sacral Nerve Stimulation product, costing StimGuard millions in lost revenue from European and worldwide sales.

4. When Stimwave declared bankruptcy on June 15, 2022, they failed to list the debt due to StimGuard in their First Day Declaration and Bankruptcy Petition, as shown in **Exhibit B,** even though bankruptcy fraud by making false representations is illegal under 18 U.S.C. 152, 1341, 1519 and 3571. Stimwave blatantly ignores the law. Consequently, StimGuard filed a Claim against the estate, which is the basis of this action, as shown in **Exhibit C.**

## BACKGROUND

### Extensive History of Related Companies

5. Ms. Laura Perryman, the founder and inventor of the technology, along with the existing Series A and Series B shareholders of Stimwave, set up multiple companies, all leveraging the core inventions of Ms. Laura Perryman, listed under https://patents.google.com/?q=(micron+devices)&inventor=laura+perryman&oq=laura+perryman+micron+devices. **Exhibit D** details a diagram of relationship of the various companies, which included Stimwave and StimGuard, who all utilized the engineering, manufacturing, operations and management of a central organization. This structure was utilized because the same fundamental technology was utilized for different lines of business, and the same staff was utilized to support each entity, primarily employed by Micron Devices LLC.

4

6. Companies were supported by Micron Devices LLC, owned by the majority holders of Stimwave. The shareholders as of 2019 had 67% cross over of ownership in Stimwave Technologies Inc. and Micron Devices LLC. Micron Devices LLC had Master Service Agreements with each of the entities, Stimrelieve LLC, a Bahamian company, that was sold to the Debtor who assumed all of its liabilities, Stimwave LLC, StimQ Medical LLC, and StimGuard LLC. The Service Agreement for StimGuard LLC is shown in **Exhibit E**.

7. Each of the companies paid a monthly fee to Micron Devices LLC and Micron Devices LLC paid the staff. StimGuard LLC ledger of payments to Micron Devices LLC show a total of $3,692,000 being paid to service the Stimguard LLC operations from early 2014 through mid 2019. StimGuard LLC had no balance due to Micron Devices LLC for services as of 2019.

8. Because the entities were closely related, intercompany loans were the norm from 2014 through 2019. These intercompany loans were kept in the Debtor Quickbooks accounting records denoted as "Stim Companies" balance mixing all of the entity's transactions under the one name. Stim Companies included Stimrelieve LLC, StimGuard LLC, StimQ Medical LLC. However, StimGuard records clearly detailed the EXACT amounts loaned and provided ONLY from StimGuard LLC to Stimwave.

9. StimGuard LLC, as closely related to Stimwave, lent funds routinely and was paid back in incremental payments from Stimwave from 2014 to 2019. The detailed ledger of these loans is shown in **Exhibit F**. In 2019, the payroll of Micron Devices LLC was closed, and all payroll moved under Stimwave to be allocated to each of the other entities. Accordingly, using FUNDS provided by StimGuard to Stimwave, Stimwave LLC paid $401,796.00 for StimGuard staff in 2019, funds which StimGuard had previously transferred to Stimwave. These payments reduced the loan balance due to Stimwave at the end of 2019 to $88,706.

**Stimguard LLC Cases and Balance Due from Stimwave**

10. On September 18, 2015, StimGuard LLC received an Investigational Device Exception (IDE) approval from the FDA for G150178, a study for a wireless neurostimulator product called Protect CTNS, shown in **Exhibit G**. Subsequently, StimGuard LLC received IDE approval from the FDA for G150047 for a sacral nerve stimulator on May 18, 2016, shown in **Exhibit H**.

11. Throughout 2017 to 2019, the StimGuard LLC cases took place as Beaumont Health Systems. Each case used the IDE approved products and the funds for those IDE products were supposed to be collected and passed to StimGuard LLC. The invoices are provided in **Exhibit I** for each case along with the February 26, 2020, demand letter for payment of the $457,000 in invoicing for the urology cases sent to Ms. Regina Groves, the CFO and COO of Stimwave in 2020. StimGuard LLC

6

accrual for these cases was on the books of the Debtor, yet it is now claimed that these amounts due were not due to Stimguard, even though the Debtor SOLD the Stimguard IDE product (a non-commercial product sold only under the IDE to clinical sites in the trial, which at this time, was only Beaumont.) This demand went unanswered by the Debtor.

12. Most of the cases involved the sales agent Ashley LaPoint, who signed the chargesheets for the urology cases. Ms. LaPoint was fully aware that the devices that were being utilized were developed by StimGuard and were NOT part of the Stimwave commercial products. Ms. LaPoint was fully aware that the placement of these devices were for urology targets either sacral roots (or pudendal) or tibial nerve placements. Ms. LaPoint intentionally DID NOT mark the cases as investigation, did not mark the cases as utilizing the FRE4 product line that was developed by StimGuard, INSTEAD pretended that these cases were Stimwave cases- so that she could collect commissions which would NOT be offered through the clinical program, as clinical specialists for StimGuard received only a flat salary monthly compensation. StimGuard estimates Ms. LaPoint received at least $70,000 in excess commissions from the cases done for StimGuard at Beaumont Health Systems.

13. After the StimGuard team of 25 left the physical building shared with Stimwave and set up their own payroll (which Regina Groves had terminated by ADP intentionally), StimGuard reached out to Ms. LaPoint to ensure she was

7

continuing to support the patients that had received the urology devices with any technical issues or concerns they had since she was the first line of contact. Ms. LaPoint said she WOULD NOT assist the patients in their follow-up care, because she "worked" for Stimwave, and not StimGuard and had no obligation to help.

14. On March 19, 2020, Stimguard LLC controller sent the next demand letter for the loan balance due to StimGuard, in the amount of $88,706 as shown in **Exhibit J**. This demand also went unanswered by the Debtor.

15. On June 12, 2020, Stimguard LLC controller sent another demand letter for both amounts of $457,120 and $88,706 to the Debtor as shown in **Exhibit K**.

**Debtor Interference with Stimguard LLC Operations and Court Orders**

16. Throughout 2020, the Debtor principal, Reggie Groves, the COO, along with Marc Love and Jeff Goldberg, waged a "war" against Stimguard, interfering with its business operations, suing Stimguard twice, once in Florida, Case No 20-1496 and once in San Diego, California, Case No 37-2020-36942-CU-BC-CTL (both cases dismissed), requesting an injunction (also denied), as shown the final orders and dismissals in **Exhibit L** and **Exhibit M**.

17. To interfere with the clinical study (the same study the Debtor kept StimGuard's funds from), the Debtor blocked access to the electronic data records kept in OpenClinica. The Delaware Chancery Court ORDERED Stimwave to provide access to OpenClinica to StimGuard, however Stimwave refused. The

Director of Clinical Affairs provided a sworn affidavit and associated history regarding the intentional interference, as shown in **Exhibit N**. Because of this interference, the StimGuard study was delayed throughout the first quarter of 2020 before Covid 19 caused a further delay from 2020 to 2021. Ms. Groves also instructed the shipping staff to "not" release the StimGuard product from the jointly shared warehouse, confirmed by the shipping manager Angel Sanchez, as shown in **Exhibit O**.

18. Stimwave, and its sales agent Ashley LaPoint, and its CFO Regina Groves, intentionally and willfully denied StimGuard from receiving its funds for its products, and in the case of Regina Groves, she intentionally interfered with StimGuard operations by not releasing the StimGuard labeled product from the once jointly utilized space (that StimGuard had paid for through its prorate portion of payments to Micron Devices LLC for over 5 years.)

19. Regina Groves proceeded to terminate the ISO 13485 status for Stimguard with the jointly registered notified body, Dekra BV, effectively terminating StimGuard's ability to sell its products in Europe. Regina Groves sent emails to all the vendors saying the Companies were being "divorced"

20. Both of StimGuard's customers, AMS Group S.p.A., in Italy, and Parimed GmbH in Switzerland orders could not be fulfilled by StimGuard. All of the

9

StimGuard product held in the fulfillment center in the Netherlands, called Rhenus, was never released to StimGuard and was held by Stimwave indefinitely.

21. Stimwave then sent out a letter to over 5,000 doctors, including urologists around the world, stating that an injunction had been issued against StimGuard, when no such injunction existed. This email was signed by Regina Groves, the CFO and COO.

22. On information or belief, Ashley LaPoint continued to use the StimGuard paid-for FRE4 product for cases at Beaumont throughout 2020 to 2022 and billed under the guise of Stimwave.

23. In 2015, StimGuard LLC paid for a mold to Oscor Inc. the joint manufacturer of both Stimwave and StimGuard products at the time, in the amount of $40,000. Stimwave has "claimed" ownership of the said mold, and as such, as of November 2019 owes StimGuard the funds for the mold, as detailed in the invoice in **Exhibit P**.

## COUNT I

## BREACH OF CONTRACT

24. The Plaintiff incorporates each preceding paragraph as if fully restated herein.

25. The agreement between the parties is supported by bank records and repayments made from the Debtor to the Plaintiff over a period of five years. The

agreement is a valid and enforceable contract, and the parties agreed to be bound by it as is evident by the repayments made by the Debtor more than $2,039,177.00.

26. The Debtor has breached its obligations to StimGuard and has failed to pay the balance of the loaned funds to StimGuard, as well as failed to provide the payments to StimGuard for the StimGuard product the Debtor sold to StimGuard clinician study sites.

27. The Debtor could perform its obligations and to make the payments to StimGuard, but intentionally chose not to do so.

28. StimGuard has no other adequate remedy at law but to request the Debtor to pay the monies due.

29. StimGuard has suffered monetary damages for the failure of the Debtor to pay the monies due, and therefore the Debtor is responsible for those damages it caused StimGuard.

30. The monetary damages that StimGuard suffered are the result of the Debtor intentionally interfering with the ISO-13485 and CE Mark of StimGuard, intentionally interfering with the access to the StimGuard products held in the shared facilities of the Debtor and "claimed" to be the Debtors, even though they were labelled StimGuard and part of StimGuard's IDE inventory, and intentionally interfering with the European customers having access to their transmitters.

31. Specific performance at this time cannot give StimGuard complete and full relief and therefore a monetary award, in addition to the loan and sales funds, is appropriate.

WHEREFORE, the Plaintiff respectfully request that this Court 1) enter judgement against the Debtor ordering the transfer of the loan funds and sales funds due 2) enter judgement in favor of the Plaintiff for the damages caused by the Debtor to the business of Stimguard, for an amount to be determined by this Court, and 3) grant all other and further relief as the Court determines to be just and proper.

## COUNT II

## FRAUDULENT TRANSFER

32. The Plaintiff incorporates each of the preceding paragraphs as if fully restated herein.

33. The Debtor breached int obligations to StimGuard by not paying StimGuard for the study patients that utilized the StimGuard device. Instead, the Debtor transferred those funds to themselves, fraudulently and to the detriment of the cash flow needs of StimGuard.

34. StimGuard suffered monetary damages for the failure of Stimwave to make it clear that the study funds were to the benefit of StimGuard and NOT Stimwave, and the Debtor is liable to StimGuard for the damages in caused StimGuard.

35. The Debtor committed fraud by not recognizing the debt due in the bankruptcy petition, and as a result StimGuard suffered damages and the Debtor is liable to StimGuard for the damages it caused.

36. StimGuard has equitable claims against the Debtor because they have refused to make these payments.

37. StimGuard holds a valid claim against the Debtor and has a right to payment, whether or not the Debtor is liquidated or unliquidated, and StimGuard holds a valid claim to these funds due.

38. StimGuard is a valid creditor of the Debtor and has been a creditor of the Debtor starting as far back as 2017.

39. Each of the transfers of funds from Stimwave the Debtor to StimGuard were fraudulent transfers since Stimwave has decided to self-enrich and not repay StimGuard for its loans and for its products (the FRE4 device) used in the clinical studies.[2]

40. The transfer made were with actual intent to defraud StimGuard.

WHEREFORE, the Plaintiff respectfully requests that this Court 1) enter judgment in favor of the Plaintiff against the Debtor, 2) declare the transfer of funds from StimGuard to the Debtor to be fraudulent transfers 3) deem the Plaintiffs debt

---

[2] All clinical studies that were being conducted by Beaumont, either under the StimGuard IDE or as a clinician-initiated study have been terminated and the data wil not been utilized for regulatory submissions as it is suspect as to the authenticity and validity of the institutional data and interference from Ashley LaPoint.

owned for its cash and products provided to the Debtor as a valid, undisputed claim against the Debtor estate, and 4) grant such other and further relief as deemed appropriate by this Court.

## COUNT III

## FRAUD

41. Plaintiff incorporates each of the preceding paragraphs as if fully restated herein.

42. The Debtor and its Chief Operating Officer, Regina Groves, each represented false material facts as true.

43. The Debtor has made untrue statements that it did not owe StimGuard any money for the loan funds nor for the products sold by the Debtor that were manufactured under StimGuard's IDE and money collected by the Debtor for StimGuard's clinical study, merely because of a written agreement not existing stating that if StimGuard product was sold, the funds would be due to StimGuard.

44. The Debtor knew that the FRE4 product with tines was developed and paid for by StimGuard, and Ashley LaPoint knew that Beaumont was utilizing the products under the understanding these products were designed by and manufactured for StimGuard.

45. The Debtor and Regina Groves knew these statements that they did not owe StimGuard the funds for the cases utilizing its products were false, based on the bank

records and invoices clearly showing the funds transferred to the Debtor and clearly showing the FRE4 products on each invoice, but the Debtor has made these statements anyway.

46. The Debtor intentionally breached its obligations to pay StimGuard in December of 2019, at the direction of Regina Groves, its COO, the funds collected relating the clinical study sales of products to Beaumont Hospital

47. StimGuard as a result has suffered harm based on the grossly intentional actions of the Debtor, its COO and Ashley LaPoint, the Debtor sales agent, that punitive damages are appropriate.

## COUNT VI

## BREACH OF FIDUCIARY DUTY

48. Plaintiff incorporates all previous counts of the Complaint as if fully restated herein.

49. Defendant Regina Groves was a director and officer of Stimwave.

50. Defendant Regina Groves willfully and knowingly misrepresented the books of Stimwave to not include the amounts due to Stimguard from its loans and from the cases done for urology that were meant to be transferring the funds to StimGuard.

51. Defendant Regina Groves breach her fiduciary duties and caused significant damage to the Creditor StimGuard.

15

WHEREFORE, the Plaintiff requests that this Court enter judgement in favor of the Plaintiff for her breaches of fiduciary duty in an amount to be determined by the Court.

## COUNT V

## CIVIL CONSPIRACY

52. Plaintiff incorporates all previous counts of the Complaint as if fully restated herein.

53. Defendants Regina Groves, Stimwave, and Ashley LaPoint all entered into a conspiracy with each other to structure the StimGuard transactions for the urology products as set forth above as "Stimwave" instead of StimGuard transactions in order to deprive the Plaintiff of the monies from the clinical site that offset the StimGuard costs of developing the products and conducting the studies.

54. These unlawful actions have caused StimGuard to suffer damages since it did not receive the funds, and due to the actions of LaPoint, the patients did not receive proper care after the StimGuard-Stimwave split.

WHEREFORE, the Plaintiff respectfully requests that this Court enter judgment in and against the Defendants, in an amount to be determined by the Court.

## COUNT VI

## TORTIOUS INTERFERENCE

16

55. Plaintiff incorporates all previous counts of the Complaint as if fully restated herein.

56. Defendant Regina Groves intentionally and willfully sent emails to StimGuard customers and to StimGuard vendors in order to have them discontinue their relationship with StimGuard.

57. Defendant Regina Groves intentionally and willfully held the inventory stock of StimGuard from being released both domestically and internationally so that StimGuard would not be able to make its sales to its customers.

58. Defendant Regina Grove intentionally and willfully terminated the ISO 13485 and CE Mark registrations with Dekra BV to harm StimGuard, instead of facilitation of a transfer.

59. Defendant Regina Groves intentionally and willfully terminated the ADP registration for StimGuard employees, instead of approving the transfer, resulting in non-payment of payroll for almost a month for the StimGuard employees because she represented to ADP the parties were NOT related, and ADP could not establish the new link to the StimGuard bank account.

60. Defendant Regina Groves intentionally and willfully represented to Chase Bank that StimGuard accounts should be closed.

61. Defendant Regina Groves filed fraudulent lawsuits against StimGuard in Delaware, California, and Florida, all to damage StimGuard's reputation.

62. Defendant Regina Groves wrongfully stated to over 5,000 contacts of StimGuard that StimGuard was subject to an injunction, which was not true.

63. Defendant Regina Groves, on information or belief, instructed her staff to not remit the OpenClinica EDC access to StimGuard, in defiance of a Court order, to damage the on-going studies being conducted by StimGuard. Even the FDA noted to StimGuard they have never seen that type of intentional and spiteful action.

64. Although Defendant Regina Groves KNEW these statements and actions were wrong, she did them anyway to damage financially and to damage the reputation of StimGuard, and to cease its operations.

65. Therefore, Regina Groves is libel to StimGuard for such damages, to be determined by the Court.

## REQUEST FOR RELIEF

66. The Debtor has refused to pay StimGuard the balance of the funds lent to the Debtor to sustain its business operations throughout 2017 and 2018 and detailed in the analysis provided by Pam Biederman, controller of StimGuard, plus the cost of the Oscor tine mold for $40,000, for a total of the amount no less than $585,826 plus damages as to be determined by the Court.

## DEMAND OF JURY TRIAL

67. The Plaintiff demands a trial by jury pursuant to Fed. R. Civ. P. 38.

Dated:       January 18, 2024    Respectfully submitted,

BRANDYN PERRYMAN

*/s/ Brandyn Perryman/*

Brandyn Perryman
1521 Alton Road, Suite 417
Miami Beach, FL 33139
(480) 371-7994 telephone
brandynperry@icloud.com

19